UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JAMES ROBERTS, JR.,** on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**JR ENGINEERING, INC.**,<br><br>Defendant. | CASE NO. 5:19-CV-00110<br><br>JUDGE SARA LIOI<br><br>**DEFENDANT J.R. ENGINEERING, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, EXPEDITED OPT-IN DISCOVERY, AND COURT SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS** |

I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant, J.R. Engineering, Inc. (JRE) requests that this Court deny Plaintiff James Robert Jr.'s Motion for Conditional Certification, Expedited Opt-In Discovery, and Court Supervised Notice to Potential Opt-In Plaintiffs in this matter. Roberts seeks conditional certification of a class consisting of "[a]ll former and current manufacturing employees of J.R. Engineering in Barberton, Ohio and Norton, Ohio between January 15, 2016 and the present." Robert's motion should be denied because he fails to make even the modest factual showing necessary for showing that he is "similarly situated" to the former and current employees he is seeking to notify of this action.

In the alternative, if the Court grants Plaintiff's motion, JRE requests that the Court limit the class; limit the statute of limitations to two years from the date of the approval of the motion; and make certain changes to the Notice and Opt-In Discovery.

II.  ALLEGATIONS CONTAINED IN PLAINTIFFS' DECLARATIONS[1]

Roberts attempts to allege two theories of liability in his Declaration. First, he alleges that JRE required him to engage in certain pre-shift and post-shift preparation work but did not pay him for the time spent performing that pre-shift and post-shift work. (Doc. #12-2, Roberts Dec. at ¶5). The

---

[1] JRE has filed a motion to strike certain portions of the Declarations. The paragraphs setting forth their purported theory of liability are "pled" in the alternative using "and/or" statements. An "and/or" statement, by definition, cannot be true and accurate. The paragraphs addressing similarly situated employees are not based on personal knowledge and are impermissible legal conclusions.

1

declarations of Pastorius and Adkins also include these allegations.  (Docs. #12-3, 12-4, Pastorius Dec. ¶4; Adkins Dec. at ¶4).  Second, Roberts alleges that he engaged in "off-the-clock" work when he arrived more than ten minutes before his scheduled start time.  On those occasions, he claims that he went to his work station and began working and then returned to the time clock and punched in prior to his scheduled start time.  (Doc. #12-2, at ¶8).

      A.      The Pre-Shift And Post-Shift Work Allegations.

The Declarations of Roberts, Pastorius, and Adkins contain the following identical allegations related to unpaid pre-shift and post-shift work.  They allege that JRE required them to perform, without pay, the following work before and after their scheduled start and stop times:

> (a) changing into and out of my personal protective equipment, including but not limited to gloves, boots, safety glasses, ear protection, *and/or* sleeve guards;
> (b) getting tools *and/or* equipment necessary to perform my manufacturing work;
> (c) walking to my assigned area of the manufacturing floor; *and/or*
> (d) performing my manufacturing/production work.

(Doc. #12-2, at ¶5; Docs. #12-3, 12-4 at ¶4).  These allegations are lifted directly from the Complaint. None of the Declarations include any facts supporting these allegations with the exception of Roberts's Declaration which includes the following allegation relating to pre-shift preparation work:

> 4.  By the start of my scheduled shift time, Defendant required me to have everything in my work area(s) up in [sic] running at my work station, which required me to perform preparation work prior to my scheduled shift start time.

(Doc. #12-2, at ¶4).  Even this allegation provides no facts about anything that Roberts was specifically required to do to have his work area "up and running" or how long it took to do so.

      B.      The "Off-The-Clock" Work Allegation.

After the Complaint was filed and the Declarations of Opt-In Plaintiffs Pastorius and Adkins had been submitted, JRE produced the time clock punches and timesheets of Roberts, Pastorius and Adkins to Plaintiffs' Counsel.  (Att. 3 - Declaration of Nancy Noall ("Noall Dec.") ¶2-3, Exs. LL, MM.  Roberts's time clock punches and his stated hours of work showed that that there were only 12 days out of 147 days

worked when Roberts's "punched in" and "punched out" time exceeded his stated hours of work by more than 10 minutes (i.e., the "de minimis" standard for preliminary and postliminary activity). (Id. at ¶6.).

The subsequent Declaration of Roberts included a new theory of liability – the "off-the-clock" work allegation. This allegation states as follows:

> 8. Defendant had a policy that prohibited employees from clocking in more than 10 minutes before their scheduled shift start times. As such, if I arrived and began working more than 10 minutes before my scheduled shift, I began working without being clocked-in, and I would return to the time clock and clock-in prior to my scheduled shift start time. If I arrived 10 minutes or less before my scheduled shift, I would clock-in prior to beginning work.

(Doc. #12-2, at ¶8). The Declarations of Pastorius and Adkins do not include this allegation.

    C.    "Similarly-Situated" Allegations.

Roberts' Declaration contains two allegations related to "similarly-situated" employees. With respect to his claim for pre-shift and post-shift work, Roberts states, in relevant part, as follows:

> I believe that I am similarly situated to the class of opt-in plaintiffs because, during my employment with Defendant, I observed that the class and I:
> (d) are/were paid only between our scheduled start and stop times:[2]
> (e) are/were not paid for performing the following work before our scheduled start times:
>     i. changing into and out of my personal protective equipment, including but not limited to gloves, boots, safety glasses, ear protection, and/or sleeve guards;
>     ii. getting tools and/or equipment necessary to perform my manufacturing work;
>     iii. walking to my assigned area of the manufacturing floor; and/or
>     iv. performing my manufacturing/production work.[3]

(Doc. #12-2, at ¶14).

Paragraph 11 contains the only other allegations related to similarly situated employees:

> I observed that Defendant did *this* to other non-exempt manufacturing employees, and I believe I am similarly-situated to these employees.

(Id. at ¶11). Roberts does not define what "this" means. Roberts does not allege that other employees worked off-the-clock or that JRE was ever aware that he, let alone other employees, worked off-the-clock.

---

[2] There is no explanation as to how Roberts knew how others were paid.

[3] It should be noted that the allegation regarding "performing my manufacturing/ production work" was included in the Declaration signed by Pastorius even though he never performed manufacturing or production work. He was a janitor and maintenance helper.

3

13834255 _1

III.     STATEMENT OF FACTS[4]

JRE has two manufacturing facilities:  J.R. Wheel and J.R. Engineering.  J.R. Wheel is located in Norton.  (Att. 1 - Declaration of Louis P. Bilinovich ("Bilinovich Dec.") ¶1, Ex. A).  J.R. Engineering is located in Barberton.  (Bilinovich Dec. ¶2,  Ex. B).   Both facilities manufacture aluminum wheels.  J.R. Wheel also polishes the wheels.

Plaintiff Roberts and Opt-In Plaintiff Pastorius worked at J.R. Wheel on the Polishing Side of the facility.  They were not employees of J.R. Wheel.  They were employees of Minuteman Staffing.  (Att. 2 - Declaration of Kathy Mefford ("Mefford Dec.") ¶10).  Opt-In Plaintiff Adkins worked at J.R. Engineering.  He was not an employee either.  He was an employee of Aspire Staffing (Mefford Dec. ¶11).  J.R. Wheel and J.R. Engineering use staffing agencies to provide the majority of their workforces. (Mefford Dec. ¶1).

Both facilities operate three shifts.   The shift times are the same at each location.  The first shift begins at 7:00 a.m. and ends at 3:00 p.m.  The second shift begins at 3:00 p.m. and ends at 11:00 p.m.  The third shift begins at 11:00 p.m. and ends at 7:00 a.m.[5] (Bilinovich Dec. ¶5). The staffing agencies shuttle their workers to the facilities using vans which generally do not arrive until ten minutes or less before the scheduled shift start time.  The majority of J.R. Wheel and J.R. Engineering workers arrive by shuttle van or by public transportation.  (Mefford Dec. ¶18-20).

A.     JRE Pay Practices For Staffing Agency Employees.

JRE has a written policy for punching in and out and recording hours working.  (Mefford Dec. ¶ 3, Ex. CC).  This policy is included on the back of paycheck sign off sheets that are filled out by workers at J.R. Wheel and J.R. Engineering each week and orally communicated to workers during orientation.  (Mefford Dec. ¶¶ 3, 4).

---

[4] JRE's brief is supported by the Declarations of Louis P. Bilinovich, Jr., the President of JRE, and Kathy Mefford, the Human Resources Director.
[5] The shift times, pay practices and details regarding the relevant jobs are also the same now as they were when Roberts and Pastorius worked at J.R. Wheel and Adkins worked at J.R. Engineering.  (Bilinovich Dec. ¶3,5; Mefford Dec. ¶9).

4

13834255 _1

Under this policy, staffing agency employees at both facilities are required to punch in before going to their workstation and to punch out at the end of their working day. The staffing agency employees are also required to fill out timesheets recording the hours that they actually worked. Staffing agency employees are told that they are paid according to their timesheets, not their time punches, and that they are expected to work their scheduled shift hours. (Mefford Dec. ¶¶5-9). Human Resources uses the time clock to verify workers' attendance and to ensure that they have accurately recorded their time. The timesheets of the staffing agency employees are then documented on a spreadsheet which is submitted to the staffing agency. The agency pays its employees based upon the hours reflected in the timesheets. However, if a staffing agency employee is not properly paid by the staffing agency for all hours worked as reflected in that worker's timesheets, JRE would have no control over that, although Human Resources personnel have assisted staffing agency employees in correcting payment errors made by the staffing agencies if the workers bring such errors to their attention. (Mefford Dec. ¶¶12, 13).

Workers are required to clock in not more than 10 minutes before their scheduled start time and are required to begin work at their scheduled start time. Workers are prohibited from working before their shift begins or after it ends unless they are working approved overtime. Workers are not permitted to work off-the-clock. J.R. Wheel and J.R. Engineering do not require workers to engage in any work activity between the time that they punch the time clock and the start of their shift. They are not required to retrieve tools for their jobs because everything that they need to perform their jobs is in their work area. Hourly workers are not required to prepare their workstations or machines prior to the start of their shift time. (Mefford Dec. ¶¶13-15).

B.  Personal Protective Equipment.

The only personal protective equipment that Roberts and Pastorius were required to wear was safety glasses and steel-toe boots. Adkins was also required to wear gloves, which are located at his work station. (Bilinovich Dec. ¶¶ 9, 37). Most workers wear their steel-toe boots to work and bring their JRE-provided safety glasses to work. JRE conducted a survey of workers earlier this year because it was

considering putting in new lockers.  The vast majority of workers indicated that they wore their boots to work and brought their safety glasses to work.  (Bilinovich Dec. ¶10; Mefford Dec. Ex. GG, HH).

If a worker at J.R. Wheel needs to pick up safety glasses prior to the start of his shift, it takes approximately 46 seconds to walk from the Polishing Side Entrance at J.R. Wheel to the Tool Crib.  If a worker goes to the locker room at J.R. Wheel to put on steel-toe boots, it takes approximately one minute and 20 seconds to walk from the Polishing Side Entrance to the locker room.  (Bilinovich Dec. ¶¶11, 12).  At J.R. Engineering, if a worker needs safety glasses prior to the start of his shift, it takes approximately 28 seconds to walk from the time clock at J.R. Engineering to the black cabinet where PPE is stored.  (Bilinovich Dec. Ex. Y - Showing PPE cabinet).  If a worker goes to the locker room to put on his steel-toe boots, it takes approximately 56 seconds to walk from the time clock to the locker room.  (Bilinovich Dec. ¶43).

        C.        The Jobs Performed By Roberts at J.R. Wheel.

Roberts worked on the Polishing Side of J.R. Wheel on the first shift.  When Roberts began working at J.R. Wheel, he was shuttled to work in a Minuteman van.  JRE does not know whether Roberts ever drove to work.  (Mefford Dec. ¶19).  The Polishing Time Clock is approximately 6 feet from the entrance for the Polishing Side at J.R. Wheel.  (Bilinovich Dec. Ex. E - Time clock).  As a worker on the Polishing  Side, Roberts entered J.R. Wheel at the entrance shown in Exhibit D and punched the time clock shown in Exhibit E ("the Polishing Time Clock").  (Bilinovich Dec. ¶16).

Roberts worked in the top wash job, wiper job, final inspection, and as a tow motor driver for a short period of time.  It takes approximately 37 seconds to walk from the Polishing Time Clock to the work stations for the top wash, wiper and final inspection jobs.  (Bilinovich Dec. ¶18).  The only tools required for the top wash job and the wiper job are a rag and latex gloves.  Rags and gloves are located next to each work station.  The tools needed for the final inspection job (valve tool; scanner; latex gloves) are located at the work station table.  There is no preparation time for any of the jobs.  (Bilinovich Dec. ¶20; Exs. H, I, J (top wash); ¶24, Ex. K, L, M (wiper); ¶30-1, Exs. O, P (final inspection).

Roberts drove a tow motor for a short period of time. Tow motor drivers are required to report to the supervisor station to receive "build sheets"(telling them where to go) and a walkie-talkie. It takes approximately 15 seconds to walk from the Polishing Time Clock to the supervisor station. Only one worker at a time can drive a tow motor. There is no preparation time and the only tool is the tow motor. (Bilinovich Dec. ¶19, 28, Exs. F, G).

D. The Jobs Performed By Pastorius at J.R. Wheel.

Pastorius worked on the Polishing Side on the first shift. He was a janitor and maintenance helper, not a manufacturing worker. He was required to report to the janitor station at the start of his shift for both jobs. It takes approximately 18 seconds to walk from the Polishing Time Clock to the janitor station. The janitorial supplies are located there. Pastorius did not work in a specific work location and was sometimes required him to come to work early or leave late. He was paid overtime if he worked more than 40 hours a week. (Bilinovich Dec. ¶ 33-6, Exs. Q, R, S). Pastorius last worked for JRE on May 26, 2016. (Mefford Dec. ¶24).

E. The Jobs Performed by Adkins at J.R. Engineering.

Tristan Adkins worked as a CNC machine operator and in the final inspection job on the third shift at J.R. Engineering. It takes approximately 35 seconds to walk from the employee entrance to the time clock and then to work to Adkins's work stations. The only personal protective equipment that Mr. Adkins was required to wear were safety glasses; steel-toed boots; and gloves. Gloves are located at each work station. (Bilinovich Dec. ¶37, 41-2). The work stations contains all of the tools needed to perform the CNC machine operator job and the final inspection job. The workers does not need to adjust or calibrate any machines or tools prior to beginning work. (Bilinovich Dec. ¶45, 47, Exs. Z, AA).

F. Starting Work 10 Minutes Before Starting Time

Roberts and Adkins could not have begun work at any of their work stations if they arrived more than ten minutes before their starting time because the worker from the previous job assigned to that job

would have been performing it (or in the case of the tow motor, driving it)[6]. (Bilinovich Dec. ¶¶23, 27, 29, 46).

IV. LAW AND ARGUMENT

The purpose of early court intervention in the conditional certification process is to achieve "the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffman-La Roche Inc. v. Spearling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.E. 2d 480 (1989). Thus, conditional certification is appropriate only when a class of "similarly situated" aggrieved employees exist. Id. JRE submits that this is a case in which Plaintiff has not met even the "modest factual showing" needed to warrant conditional certification.[7]

> A. Roberts Has The Burden Of Showing Evidence Of A Widespread Discriminatory Plan And A Factual Nexus Between His Claims And Those Of Similarly Situated Aggrieved Workers.

A plaintiff is "similarly situated" with a proposed collective class when "they suffer from a single, FLSA-violating policy" or the plaintiff "can demonstrate, at a minimum, that [the plaintiff and the proposed class] claims are unified by common theories of defendant's statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enters. Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). Factors generally considered by courts are: 1) whether potential plaintiffs have been identified; 2) whether affidavits of potential plaintiffs have been submitted; and, 3) whether there is evidence of a 'widespread' discriminatory plan affecting those plaintiffs, which was maintained by defendants." *Waggoner v. U.S. Bancorp*, 110 F. Supp.3d 759, 764 (N.D. Ohio 2915).

While the standard that Roberts must meet at this initial stage of certification is "fairly lenient," it is not non-existent. *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012). Conclusory allegations are insufficient to support conditional certification. *Arrington v. Mich. Bell Tel.*

---

[6] In addition, they would not know whether they would be assigned to that work station until the start of the shift. For the period of time during which Roberts came to work on a Minuteman shuttle bus, he would have also generally arrived at work less than ten minutes before his starting time. (Mefford Dec. ¶17).

[7] Indeed, the declarations submitted by the Plaintiffs are so deficient of any specific facts that JRE has separately filed a motion to strike certain portions of the declarations (which consist of the purported theories of liability in this case. If the declarations are stricken, the motion for conditional certification should be denied on that basis alone.

*Co.*, 2011 WL 3319691, at *4 (E.D. Mich. Aug. 1, 2011).  He must produce some "evidence of a 'widespread' discriminatory plan" and a "*factual nexus* – that is, something more than mere allegations" between his claims and similarly situated aggrieved employees.  *O'Neal v. Emery Federal Credit Union*, 2013 WL 4013167, at *8 (S.D.Ohio, August 6, 2013).  Further, in considering whether or not this standard has been met, this Court may consider the declarations and evidence submitted by JRE.  *Gaffers v. Sitel Worldwide Corp.*, 2016 WL 3137726, at *3 (M.D. Tenn. June 6, 2016).

For the reasons set forth below, Roberts cannot meet this burden.

B. Roberts Has Failed To Produce Evidence Of A Widespread Discriminatory Plan Regarding His Pre-Shift/Post-Shift Work Claim.

1. Roberts's Declaration Does Not Sufficient Facts For This Court To Determine Whether A Factual Nexus Exists Between His Alleged Pre-Shift/Post-Shift Work Claims And Similarly Situated Aggrieved Workers.

Plaintiff's motion for conditional certification can only be granted if Roberts's declaration "at least alleges sufficient facts sufficient to support an inference that he has actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours. " *O'Neal*, at *8.  Roberts's Declaration contains no facts as to what pre-shift and post-shift work he actually performed or how long it took him to do so.  Thus, he has not provided this Court with sufficient evidence to infer that *other employees* engaged in similar work.  For this reason, this Court must deny Roberts's motion for conditional certification.

First, Roberts's allegations relating to changing into and out of PPE; retrieving tools; and walking to work stations contain no actual facts.  They are just the verbatim allegations of the Complaint.  The Declarations of the Opt-In Plaintiffs simply repeat these verbatim allegations. These allegations do not even provide this Court with enough evidence to determine that an FLSA violation occurred as they provide no basis to conclude that such alleged work took more than a "de minimis" amount of time.  *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir.1984) (generally "daily periods of approximately ten minutes" are considered de minimis).

9

Plaintiffs do not identify what specific PPE that they change into and out of, only that the PPE "include[ed] but was not limited to" certain categories. They do not state how long it took them to put on the PPE. Plaintiffs do not identify what "tools *and/or* equipment" they got prior to their starting time or where they retrieved them from.[8] Plaintiffs provide no details about how long it took them to walk to their work stations.

As for the allegation concerning performing manufacturing/production work, Roberts's statement that JRE required him to have "everything in my work area(s) up in [sic] running" prior to the start of his shift likewise provides this Court with no evidence as to what Roberts actually did to get his work area "up and running" and how long it took Roberts to do so. Again, because Roberts provides no details as to what he did, he has not provided this Court with sufficient evidence to determine what he did himself, let alone infer that other employees engaged in similar work.

Moreover, the only portion of Robert's Declaration that references the time that it took for him to complete pre-shift activities completely undercuts his claim. Paragraph 8 of Roberts' Declaration states as follows:

> Defendant had a policy that prohibited employees from clocking in more than 10 minutes before their scheduled shift start times. As such, if I arrived and began working more than 10 minutes before my scheduled shift, I began working without being clocked-in, and I would return to the time clock and clock-in prior to my scheduled shift start time. *If I arrived 10 minutes or less before my scheduled shift, I would clock-in prior to beginning work.*

(emphasis added). JRE will address the "off-the-clock" allegation below. But for purposes of evaluating Roberts's claim of pre-shift and post-shift work, the last sentence of Paragraph 8 proves that none of the pre-shift work took more than a "de minimis" amount of time.

If Roberts could *arrive* at the plant less ten minutes before his 7:00 a.m. start time; clock in; complete all the pre-shift prep work that JRE allegedly *required him to complete before his scheduled*

---

[8] Declarations are made under penalty of perjury and must consist of true and accurate statements. Statements that a declarant put on PPE "including but not limited to" certain items and that a declarant got "tools *and/or* equipment" are not even proper declarations because it is impossible to determine what specifically the declarant is stating is true. What PPE is declarant claiming that he actually put on? Is the declarant stating that he got tools? Is he stating that he got equipment? Is he stating that he got both? A declaration that keeps a declarant's options open is not a declaration.

*start time* (Roberts Dec. ¶ 4); and begin work at 7:00 a.m., then, by logical necessity, the time he allegedly spent putting on PPE; retrieving tools; walking to his machine; and getting "everything in his work area(s) up [and] running", was all completed in less than ten minutes and thus "de minimis." This Court does not need to look beyond Roberts's own Declaration to conclude that conditional certification is not warranted in this case.

      2.      The Evidence Submitted By JRE Makes Clear That Roberts Cannot Establish A Factual Nexus Between His Pre-Shift/Post-Shift Claims And A Similarly Situated Aggrieved Class.

JRE has submitted voluminous evidence that demonstrates that no factual nexus exists between Roberts's claims for pre-shift/post-shift work and a similarly situated aggrieved class. This Court is permitted to consider JRE's evidence in considering whether or not to grant conditional certification. *Gaffers v. Sitel Worldwide Corp.*, 2016 WL 3137726, at *3 (M.D. Tenn. June 6, 2016). Consideration of JRE's evidence is particularly appropriate here since its evidence is not in conflict with Roberts's declaration. JRE's evidence specifies Roberts's PPE (where he does not). It describes the tools Roberts needed to perform his job (where he does not). It specifies the walking time from the time clock to his work stations (where he does not). And it details what preparation his jobs required (where he does not).

Specifically, JRE's evidence shows the following:

Policy:
- JRE does not require workers to perform any work between the time that they punch in and the start of their scheduled shift.

PPE:
- Roberts and Pastorius were only required to wear steel toe boots and safety glasses. The vast majority of workers at both plants wear their boots to work and carry their glasses with them.
- Adkins was required to wear steel toe boots, safety glasses, and gloves. The gloves were at his work station.

Tools:
- There were no tools and/or equipment to retrieve prior to the start of the scheduled shift.

Walking Time:
- From time clock to top wash; wiper; and final inspection (Roberts): 37 seconds;
- From time clock to supervisor's station for tow motor job (Roberts): 15 seconds
- From time clock to janitor's station (Pastorius): 18 seconds

11

13834255 _1

- From time clock to machine operator and final inspection (Adkins): 17 seconds

Work Area Preparation Work Prior To Scheduled Start Time.
- Roberts, Pastorius and Adkins had no responsibilities to get their work areas "up and running." Their jobs did not require pre-shift preparation work.
- Comparing Roberts's clock punches and his time cards confirms what he admits in his Declaration. He could arrive at work at 6:56; 6:57; or even 6:58 and have sufficient time to complete everything JRE allegedly required him to do before his scheduled start time and begin work at 7:00 a.m. (Mefford Dec. Ex. DD at pgs. 3, 5, 9, 11 passim.).
- Pastorius was a janitor and maintenance helper. He performed no manufacturing/production work and his termination date, May 26, 2016, means that he is not even a member of the class.

JRE's evidence demonstrates that workers in the jobs in which Roberts, Pastorius and Adkins worked are not similarly situated to Plaintiffs. The vast majority of these workers walked in wearing their steel toe boots and carrying their safety glasses and thus engaged in no pre-shift donning or post-shift doffing. These workers did not retrieve tools before their scheduled start time and walked to their work stations in less than a minute. Finally, these workers did not engage in any pre-shift preparation work.

Based on this evidence, Plaintiff's motion for conditional certification must be denied.

C. Roberts Cannot Show A Factual Nexus Between His Claim Of "Off-The-Clock" Work And Similarly Situated Aggrieved Workers.

Roberts also cannot show a factual nexus between his claim of "off-the-clock" work and a class of similarly situated aggrieved workers. First of all, Roberts has provided no evidence that any other employees engaged his "off-the-clock" work practice. *Waggoner*, 110 F.Supp.3d at 765. Pastorius and Adkins do not claim that, if they arrived ten minutes or more before their scheduled start time, that they proceeded to work off-the-clock and then returned to the time clock to punch in.

Roberts's only statement in his Declaration as to similarly-situated employees states as follows:

I observed that Defendant did *this* to other non-exempt manufacturing employees, and I believe that I am similarly-situated to these employees.

(Doc. #12-2, at Para. 11; emphasis added). Roberts does not further state what he means by "this." The paragraph immediately preceding this paragraph includes only the rote allegation that Roberts "was not compensated for all of the time that I worked." Id. at Para. 10. Although Roberts states that an "HR professional" at J.R. Wheel instructed him that his timecard should state his scheduled start time, and not

12

13834255 _1

the time that he actually started performing work, he does not state that he was aware of other workers being told this. Id. at Para. 7. Nor does he state that other workers engaged in the practice of starting work without clocking in on the occasions when they arrived at work ten minutes or more before their scheduled start times.

Second, Roberts has produced no evidence that he engaged in his alleged practice of "off-the-clock" work as a result of JRE policy. JRE prohibits off-the-clock work. In fact, JRE's Policy expressly instructs workers to "punch in and out as close as possible to *your start and end time.* (Mefford Dec., Ex. CC). JRE's Policy further instructs workers to "fill out your timesheets to reflect the hours that you *actually* worked." Id. While it is true that JRE wants workers to start work at their scheduled start time and enforces that practice, this does not give rise to an inference that JRE compelled workers to work off-the-clock. It simply reflects the reality that, if Roberts arrived ten minutes or more before his scheduled start time, there were third shift workers at his work station. Why would JRE require Roberts to walk to the top wash platform work station and stand beside the platform while the third shift worker completed his or her shift?

Finally, Roberts has produced no evidence that JRE was aware that he was engaging in off-the-clock work. As the Sixth Circuit stated in *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012), "an employee must show that the employer knew or should have known that he was working overtime. . . . An employer cannot satisfy an obligation that it has no reason to think exists." Id. at 876. Here, JRE had a reasonable process for employee to report uncompensated time that Roberts did not follow. JRE Policy expressly instructs workers that "if you do not punch in and out you can get your supervisor to confirm hours worked". (Mefford Dec. Ex. CC). Roberts never approached anyone at JRE and tried to get paid for his alleged off-the-clock work. (Mefford Dec. ¶13). In such a circumstance, there is insufficient evidence to establish a factual nexus between Roberts's claim and a class of similarly situated aggrieved employees. *White*, 699 F.3d at 876 ("if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for nonpayment if the employee fails to follow the established process.").

For these reasons, Roberts cannot show a factual nexus between his claim of "off-the-clock" work and a class of similarly situated aggrieved workers and his motion for conditional certification should be denied.

> D. Plaintiff's Motion for Conditional Certification Should Be Denied Because Plaintiff Has Not Joined The Entities That Employed Plaintiffs.

JRE's Answer stated that Roberts, Pastorius and Adkins were not employees of JRE and that joinder of the staffing agencies was necessary under Civ. R. 19. Plaintiff's Counsel has not joined these parties. It is not an efficient use of judicial resources to initiate the conditional certification process without the involvement of their employers (who possess the actual payroll records and likely the best contact information).

> E. In The Alternative, Plaintiff's Proposed Class Should Be Redefined To Specify A Theory Of Liability; The "Notice Of Right To Join Lawsuit" Should Be Modified; The Statute Of Limitations Should Be Two Years; The Opt-In Period Should Be 45 Days; And The Information Requested Of Potential Class Members Limited.

JRE does not object to the Notice in this case being sent to all current and former nonexempt manufacturing employees should this Court decide to grant Plaintiff's motion for conditional certification. However, Plaintiffs' current definition of the class is improper in that it does not describe the theory or theories of liability upon which Plaintiffs base their claims. As such, it invites opt-ins from any workers who either believe, or simply want to claim, that they have not been paid the correct amount of overtime. Thus, JRE proposes that the Court modify the top of the Notice to include whichever theory(ies) of liability this Court deems proper:

> TO: All former and current non-exempt manufacturing workers of J.R. Engineering, Inc. in Barberton, Ohio and Norton, Ohio between [two years from date of granting of motion] and the present who ["arrived more than ten minutes before their scheduled start time and performed manufacturing work" and/or "performed unpaid pre-shift and post-shift work"]

Plaintiff's Complaint does not allege that JRE adopted a policy of not paying for preliminary and postliminary compensable activities (donning and doffing; getting tools and equipment; walking time). Plaintiffs only allege that they were not paid for such activities. (Doc. #1, at Paras. 20-39). Plaintiffs also do not allege that JRE has been sued for past FLSA violations. As such, Plaintiffs bare allegation that

14

13834255 _1

JRE's violation of the Act was "knowing and willful" is not sufficient to trigger the three-year statute of limitations. Thus, the notice should only be sent to workers at J.R. Wheel or J.R. Engineering within the last two years. *Oullette*, 2017 WL 2972636, at *5. The Opt-In Discovery Request should also be modified accordingly.

Both the Notice and the Opt-In Discovery Request identify the effective statute of limitations date based upon the date that the Complaint in this case was filed. The proper date for purposes of tolling the statute is the date on which this Court grants the motion for conditional certification. *Crescenso v. O-Tex Pumping, LLC*, 2016 WL 327726, at *5. The Notice does not inform Plaintiffs that they may be liable for JRE's attorneys' fees should JRE prevail in this lawsuit. Such language is reasonable to include in a notice of potential opt-in plaintiffs. *Oullette*, at *6. The Opt-In Discovery Request seeks not only the last known address of potential opt-in plaintiffs but also their telephone numbers and email address. Discovery regarding potential plaintiffs should be limited to names, last known addresses and dates of employment. *Id*. In addition, the Request requires that JRE produce the information within 14 days. JRE will need additional time to produce such information, particularly given that Plaintiffs are not their employees. JRE requests 30 days to produce the information requested.

Finally, Plaintiffs do not specify a date by which Consent Forms must be returned. Defendants propose that 45 days is a reasonable period of time.

V. CONCLUSION

For the foregoing reasons, JRE requests that this Court deny Plaintiff James Robert Jr.'s Motion for Conditional Certification, Expedited Opt-In Discovery, and Court Supervised Notice to Potential Opt-In Plaintiffs in this matter. In the alternative, if the Court grants Plaintiff's motion, JRE requests that the Court limit the statute of limitations to two years; limit the class to conform to Plaintiff's theory of liability; and make certain changes to the Notice and Opt-In Discovery as set forth above.

Respectfully submitted,

/s/ *Morris L. Hawk*
**Nancy A. Noall (0010974)**
nnoall@ralaw.com
**Morris L. Hawk (0065495)**
mhawk@ralaw.com
**Monica L. Frantz (0090878)**
mfrantz@ralaw.com
**Roetzel & Andress, LPA**
1375 East Ninth Street
One Cleveland Center, 10th Floor
Cleveland, OH  44114
(T) 216.623.0150 (F) 216.623.0134

*Attorneys for Defendant JR Engineering, Inc.*

## CERTIFICATE OF COMPLIANCE

I, Morris L. Hawk, certify that this brief complies with the requirements of Local Rule 7.1 for page limitation on memoranda related to non-dispositive motions.

/**s**/ *Morris L. Hawk*
Morris L. Hawk (0065495)
*One of the Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 20, 2019, a copy of the foregoing instrument was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/**s**/ *Morris L. Hawk*
Morris L. Hawk (0065495)
*One of the Attorneys for Defendant*