# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JAMES ROBERTS, JR.,** | **CASE NO. 5:19-CV-00110** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **J.R. ENGINEERING, INC.,** | |
| **Defendant.** | **MEMORANDUM OF OPINION AND ORDER** |

Currently pending is Plaintiff James Roberts, Jr.'s Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Motion for Conditional Certification"). (Doc. No. 12.) Defendant J.R. Engineering, Inc. ("JRE") filed a brief in opposition to Plaintiff's Motion for Conditional Certification on May 20, 2019, to which Plaintiff responded on June 4, 2019. (Doc. Nos. 16, 20.) Thereafter, the previous judge assigned to this case granted JRE leave to file a sur-reply, which JRE filed on June 14, 2019. (Doc. No. 23.)

JRE has also filed a Motion to Strike Certain Portions of the Declarations of James Roberts, Jr., Jacob Pastorius, and Tristan Adkins ("Motion to Strike"). (Doc. Nos. 14, 15.) Plaintiff filed a brief in opposition to JRE's Motion to Strike on June 3, 2019, to which JRE responded on June 10, 2019. (Doc. Nos. 19, 22.)

For the following reasons, Plaintiff's Motion for Conditional Certification is GRANTED IN PART and DENIED IN PART, and JRE's Motion to Strike is GRANTED IN PART and DENIED IN PART, as follows.

I.  **Procedural Background**

On January 15, 2019, Plaintiff James Roberts, Jr. ("Plaintiff" or "Roberts") filed a Complaint on behalf of himself and all others similarly situated against JRE, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.01 *et seq.* (Doc. No. 1.) Of particular relevance here, Plaintiff alleges that JRE violated the FLSA by failing to appropriately compensate Plaintiff and other similarly situated employees for overtime hours worked before and after the end of their shifts. (*Id.* at ¶¶ 19, 36.) Also, on January 15, 2019, Roberts, Tristan Adkins ("Adkins"), and Jacob Pastorius ("Pastorius") (collectively, "Plaintiffs") filed Consent Forms to opt in as plaintiffs in the present action. (Doc. No. 3.)

On April 15, 2019, Plaintiff filed a Motion for Conditional Certification. (Doc. No. 12.) Therein, Plaintiff seeks to certify a class consisting of "[a]ll former and current manufacturing employees of J.R. Engineering in Barberton, Ohio and Norton, Ohio between January 15, 2016 and the present." (*Id.* at 8.) In support of the Motion for Conditional Certification, Plaintiff Roberts and Opt-In Plaintiffs Adkins and Pastorius submitted Declarations. (Doc. Nos. 12-2, 12-3.) JRE filed a brief in opposition on May 20, 2019, and Plaintiff filed a reply in support of certification on June 4, 2019. (Doc. Nos. 16, 20.) The previous judge assigned to this case then granted JRE leave to file a sur-reply, which JRE filed on June 14, 2019. (Doc. No. 23.)

On the same day that JRE filed its opposition to Plaintiff's Motion for Conditional Certification, JRE also filed a Motion to Strike certain portions of Plaintiffs' Declarations. (Doc. Nos. 14, 15.) Plaintiff filed a brief in opposition to JRE's Motion to Strike on June 3, 2019, to which JRE responded on June 10, 2019. (Doc. Nos. 19, 22.)

2

This matter was then re-assigned to the undersigned on June 27, 2019 pursuant to General Order 2019-13.

**II.   Factual Allegations**

JRE is an Ohio corporation that manufactures automobile parts. (Doc. No. 1 at ¶¶ 7, 14.) It has two manufacturing facilities—one in Norton, Ohio that operates under the name J.R. Wheel, and one in Barberton, Ohio that operates under the name J.R. Engineering. (Doc. No. 16-1 at ¶¶ 1-2.)

In support of his Motion for Conditional Certification, Roberts submitted a Declaration in which he asserts that he was employed by JRE as a non-exempt manufacturing employee from September 2017 to October 2018. (Doc. No. 12-2 at ¶ 1.) Roberts claims that he worked at the J.R. Wheel facility in Norton, Ohio, that he was paid on an hourly basis, and that, during his employment, he held a variety of positions, including "wiper, tow-motor driver, wash operator, and final inspection." (*Id.* at ¶¶ 1-2; Doc. No. 1 at ¶ 15.) Roberts's Declaration also provides the following:

> 3. During my employment, Defendant paid me only for work performed between my scheduled shift start and stop times.
>
> \*       \*       \*
>
> 5. Defendant did not pay me for performing the following work before my scheduled shift start time:
>
>    a) changing into and out of my personal protective equipment, including but not limited to gloves, boots, safety glasses, ear protection, and/or sleeve guards;
>
>    b) getting tools and/or equipment necessary to perform my manufacturing work;
>
>    c) walking to my assigned area of the manufacturing floor; and/or
>
>    d) performing my manufacturing/production work.
>
> 6. Defendant required me to perform this unpaid work before my scheduled start time.

3

(Doc. No. 12-2 at ¶¶ 3, 5-6.) In addition, Roberts alleges that JRE's "HR professional" instructed him to record his scheduled shift start time on his handwritten timecard, rather than the time he actually started working, and that Roberts would work without being clocked-in if he arrived more than ten minutes before his scheduled shift because JRE prohibited employees from clocking in more than ten minutes early. (*Id.* at ¶¶ 7-8.) As a result of JRE's practices and policies, Roberts asserts that he was not compensated for all of the time he worked, including all of the overtime hours he worked over forty hours each week. (*Id.* at ¶¶ 9-10.)

Further, Roberts avers that he "observed that [JRE] did this to other non-exempt manufacturing employees," and that he believes he is "similarly-situated to these employees." (*Id.* at ¶ 11.) Specifically, Roberts states he observed that other manufacturing employees were likewise only paid for work between their scheduled start and stop times and not paid for performing any of the tasks listed above before their shift, that they worked in excess of forty hours in a week, and that they were not paid the proper overtime rate for those hours. (*Id.* at ¶ 14.)

Opt-In Plaintiffs Adkins and Pastorius also submitted Declarations in support of Plaintiff's Motion for Conditional Certification. (Doc. No. 12-3.) Adkins was a "machine operator" at the J.R. Engineering facility in Barberton, Ohio from February to August 2018, and Pastorius was a "line operator" and "machine maintenance man." at the J.R. Wheel facility in Norton, Ohio from January 2013 to May 2016. (*Id.*)[1] Both Declarations contain the following identical allegations:

---

[1] JRE notes that Pastorius cannot be a member of any class that is certified because his employment ended more than three years ago and the statute of limitations for any claim for unpaid compensation pursuant to the FLSA arising from his employment has expired. (Doc. No. 16 at 12.) Neither party addressed how this should affect the Court's consideration of his Declaration. However, even disregarding Pastorius's Declaration, the Court would come to the same conclusion regarding certification.

4

    4. During my employment, I was only paid for work performed between my scheduled start and stop times. I was not paid for performing the following work before and after my scheduled start and stop times:

        a. Changing into and out of my personal protective equipment, including but not limited to a [sic] gloves, boots, safety glasses, ear protection, and/or sleeve guards;

        b. Getting tools and/or equipment necessary to perform my manufacturing work;

        c. Walking to my assigned area of the manufacturing floor; and/or

        d. Performing my manufacturing work.

    5. J.R. Engineering required me to perform this unpaid work before and after my scheduled start and stop times.

    6. As a result of J.R. Engineering's practices and policies, I was not compensated for all of the time I worked, including all of the overtime hours I worked over 40 each workweek.

    7. I observed that J.R. Engineering did this to other manufacturing employees, and I believe I am similarly situated to these employees.

(*Id.*)

In response, JRE submitted Declarations from its Chief Executive Officer and Owner, its Human Resources Director at J.R. Wheel, and its lead trial counsel. (Doc. Nos. 16-1, 16-28, 16-38.) Based on these Declarations and their accompanying exhibits, JRE asserts that Roberts, Adkins, and Pastorius were not employees of JRE, but were instead employed by staffing agencies utilized by JRE to provide the majority of its workforce. (Doc. No. 16 at 4.) JRE also claims that Pastorius was not a manufacturing worker, but a janitor and maintenance helper. (*Id.* at 7.) According to JRE, staffing agency employees at both of its facilities are required to (1) punch in and out before and after their shifts and (2) fill out timesheets recording the hours they actually worked. (*Id.* at 5.) While staffing agency employees may punch in slightly before their scheduled shift starts (but not more than ten minutes early), they are prohibited from actually working before or after their scheduled shift

5

unless they are working approved overtime. (*Id.*) Thus, staffing agency employees are paid based on their timesheets, and their time punches are used to verify their attendance and the accuracy of their timesheets. (*Id.*)

Further, JRE states that it does not require workers to engage in any work activity between the time that they punch in and the start of their shift. (*Id.*) Specifically, JRE asserts that its workers are not required to prepare their workstations or machines prior to their shift and that they are not required to retrieve any tools because everything they need to perform their jobs is already in their work areas. (*Id.*) Moreover, JRE contends the only pieces of personal protective equipment Roberts, Adkins, or Pastorius would ever have been required to wear were steel-toed boots, gloves, and safety glasses, and such equipment is either worn into work by most workers or located at or near their work areas. (*Id.* at 5-7.) JRE also claims manufacturing workers would not be able to start working more than ten minutes before their shift started because JRE operates three eight-hour shifts each day and the previous shift's workers would still be at the work station. (*Id.* at 4, 7-8.)

### III. JRE's Motion to Strike

Before reaching the merits of Plaintiff's Motion for Conditional Certification, the Court will address JRE's Motion to Strike certain portions of Plaintiffs' Declarations. Initially, Plaintiff argues that the Motion to Strike should be rejected outright because courts do not have the power to strike anything other than pleadings under Fed. R. Civ. P. 12(f). (Dkt. 19 at 3-4.) The Court disagrees, as courts commonly strike material other than pleadings, including declarations filed in support of conditional certification. *E.g.*, *Crescenzo v. O-Tex Pumping, LLC*, No. 15-CV-2851, 2016 WL 3277226, at *2 (S.D. Ohio June 15, 2016); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-67 (S.D. Ohio 2005). As such, the Court will consider the substance of JRE's Motion.

6

First, JRE contends the Court should strike Paragraphs 5 and 14(e) of Roberts's Declaration and Paragraph 4 of Pastorius's and Adkins's Declarations because each paragraph contains "and/or" statements taken directly from the rote allegations in the Complaint.  (Doc. No. 15 at 2-3.)  Because declarations must contain true and accurate statements based on the declarant's personal knowledge, JRE asserts "and/or" statements that plead facts in the alternative are improper.  (*Id.*)  In response, Plaintiff asserts the Declarations are appropriate because "on certain days each declarant could be performing work [sic] various work or changing into and out of various protective equipment, for which they were not paid."  (Doc. No. 19 at 8.)  It certainly would have been advisable for Plaintiffs' to have clarified this in their Declarations.  However, JRE does not cite any authority for striking declarations solely on the basis that they contain "and/or" statements.  Thus, the Court will deny this portion of JRE's Motion to Strike.

Next, JRE asserts the Court should strike Plaintiffs' statements that they are "similarly situated" to other manufacturing employees because these statements are inappropriate legal conclusions.  (Doc. No. 15 at 3-5.)  Plaintiff asserts the phrase "similarly situated" as used in the Declarations should be construed according to its plain meaning, rather than its legal definition.  (Doc. No. 19 at 7-8.)  The Court agrees with JRE that whether Plaintiffs are "similarly situated" to other JRE employees is a legal question, and grants JRE's Motion to Strike the statements in Paragraphs 11 and 14 of Roberts's Declaration and Paragraph 7 of Pastorius's and Adkins's Declarations that aver they are similarly situated to other JRE manufacturing employees.  *Crescenzo*, 2016 WL 3277226, at *2 (granting motion to strike "statements from Plaintiff and other affiants asserting that they are similarly situated").

7

Finally, JRE argues that the Court should strike the rest of Paragraphs 11 and 14 of Roberts's Declaration and Paragraph 7 of Pastorius's and Adkins's Declarations because there is no indication that Plaintiffs' have personal knowledge of what they claim to have "observed." (Doc. No. 15 at 3-5.)  The Court finds this argument unpersuasive.  As Plaintiff points out, their personal knowledge can be inferred because they worked in the same facilities as other employees and had the opportunity to personally observe them.  *See Snelling v. ATC Healthcare Services Inc.*, No. 2:11–CV–00983, 2012 WL 6042839, at *3 (S.D. Ohio Dec. 4, 2012) ("Although the basis for knowledge as to other nurses is not entirely clear, the Court can reasonably infer that Plaintiff and Ms. Wolffe would have at least some personal knowledge as to their co-workers, particularly given that each nurse apparently worked at multiple facilities throughout the state.").  In addition, while Plaintiffs' statements that they observed that JRE "did this" to other employees is somewhat vague, it seems clear that they are referring to JRE's payment practices described earlier in their Declarations.  Similar statements have been considered in other cases as well.  *See Bauer v. Transtar Indus., Inc.*, No. 1:15 CV 2602, 2016 WL 1408830, at *1 (N.D. Ohio Apr. 11, 2016) (granting conditional certification based on the failure to pay overtime compensation when opt-in plaintiffs declared that they "observed that Transtar did this to other employees").  Accordingly, this portion of JRE's Motion to Strike is denied as well.

**IV.   Plaintiff's Motion for Conditional Certification**

     **a.  Legal Standard for Conditional Certification**

Under the FLSA, an employer must generally compensate an employee "at a rate not less than one and one-half times the regular rate at which he is employed" for work exceeding forty hours per week.  *See* 29 U.S.C. § 207(a)(1); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396 (6th Cir. 2017).  "Congress passed the FLSA with broad remedial intent" to "correct labor conditions detrimental to

8

the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (citations and internal quotations omitted). As the Sixth Circuit has explained, "the provisions of the statute are 'remedial and humanitarian in purpose,' and 'must not be interpreted or applied in a narrow or grudging manner.'" *Monroe*, 860 F.3d at 396 (quoting *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002)).

To effectuate Congress' remedial purpose, the FLSA authorizes collective actions "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike class actions under Fed. R. Civ. P. 23, collective actions under the FLSA require putative class members to opt into the class. *Id.*; *see also Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (to participate in FLSA collective actions, "all plaintiffs must signal in writing their affirmative consent to participate in the action"). "These opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 583 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

Only similarly situated employees are permitted to "opt into" an FLSA collective action. *Comer*, 454 F.3d at 546. The FLSA does not define the term "similarly situated" and neither has the Sixth Circuit. *See Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016); *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 483 (S.D. Ohio 2014); *Rosenbohm v. Cellco P'ship*, No. 2:17-cv-731, 2018 WL 4405836, at * 1 (S.D. Ohio Sept. 17, 2018). Courts generally use a two-stage approach to determine this issue. *See Comer*, 454 F.3d at 546-47; *Houston v. Progressive Cas. Ins. Co.*, No. 1:15 CV 1853, 2015 WL 8527339, at * 1 (N.D. Ohio Dec. 11, 2015). At the first stage,

which generally occurs before the parties have conducted discovery,[2] a court "must determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *See Hamm v. Southern Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 874 (S.D. Ohio 2017). During the second stage, the court makes a final determination regarding whether opt-in class members are similarly situated based upon a thorough review of the record after discovery is completed. *See, e.g., Marek v. Toledo Tool & Die Co., Inc.*, No. 3:16CV03005, 2017 WL 5891765, at *2-3 (N.D. Ohio Nov. 29, 2017); *Houston*, 2015 WL 8527339, at *1.

Because the first stage is conducted prior to (or at the beginning of) the discovery process, plaintiffs need only make a "modest factual showing" that they are similarly situated to proposed class members. *See Comer*, 454 F.3d at 546-47; *Myers*, 201 F. Supp. 2d at 890; *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015). The standard at this stage is "fairly lenient . . . and typically results in 'conditional certification' of a representative class."[3] *Comer*, 454 F.3d at 547. *See also Myers*, 201 F. Supp. 3d at 890; *Lewis*, 789 F. Supp. 2d at 868; *Atkinson,* 2015 WL 853234, at * 2. "In order to establish that other employees are similarly situated to the named plaintiff, the named plaintiff need only show that [her] position [is] similar, not identical, to the positions held by putative class members." *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002). *See also Comer*, 454 F.3d at 546-47; *Lewis,* 789 F. Supp. 2d at 867. Thus, similarly situated

---

[2] As another court in this district has explained, "[b]ecause the statute of limitations on an FLSA claim continues to run until written consent is filed with the court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit." *Atkinson v. TeleTech Holdings*, No. 3:14–cv–253, 2015 WL 853234, at * 2 (S.D. Ohio Feb. 26, 2015). *See also Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).

[3] The FLSA does not import "the more stringent criteria for class certification under Fed. R. Civ. P. 23," and it is also "less stringent than [the] Rule 20(a) requirement that claims 'arise out of the same action or occurrence' for joinder to be proper[.]" *O'Brien*, 575 F.3d at 584. *See also Ouellette v. Ameridial, Inc.*, No. 5:16-cv-2144, 2017 WL 2972636, at * 2 (N.D. Ohio July 12, 2017).

class members under the FLSA are those whose causes of action accrued in approximately the same manner as those of the named plaintiffs. *See Lewis*, 789 F. Supp. 2d at 868; *Atkinson*, 2015 WL 853234, at *2.

Courts have also found that plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs." *O'Brien*, 575 F.3d at 585. Proof of a "unified policy" of violations is not required, however. *Id. See also Myers*, 201 F. Supp. 3d at 890 (same); *Marek*, 2017 WL 5891765, at * 2 ("But, by the same token, 'showing a 'unified policy' of violations' is not a hard and fast requirement."). Employees may also be similarly situated if "their claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien,* 575 F.3d at 585. *See also Marek*, 2017 WL 5891765, at *2.

The lead plaintiffs bear the burden of demonstrating that the proposed class members are similarly situated to the lead plaintiff. *See O'Brien*, 575 F.3d at 584; *Myers,* 201 F. Supp. 3d at 890. In terms of proof, courts consider "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted." *Myers*, 201 F. Supp. 3d at 890. *See also Lewis*, 789 F. Supp. 2d at 868. However, at the conditional certification stage, a court "does not generally consider the merits of claims, resolve factual disputes, or evaluate credibility." *Waggoner,* 110 F. Supp. 3d at 765. *See also Myers*, 201 F. Supp. 3d at 890. Indeed, "requiring additional factual support, or weighing the defendant's competing factual assertions prior to discovery, would 'intrude improperly into the merits of the action.'" *Hamm*, 275 F. Supp. 3d at 874 (quoting *Lacy v. Reddy Electric Co*., No. 3:11–cv–52, 2011 WL 6149842, at *3

(S.D. Ohio Dec. 9, 2011)). *See also Murton v. Measurecomp LLC*, No. 1:07CV3127, 2008 WL 5725631, at *5 (N.D. Ohio June 9, 2008).

The decision to conditionally certify a class, and thereby facilitate notice, is "within the discretion of the trial court." *Castillo*, 302 F.R.D. at 483. *See also Comer*, 454 F.3d at 546; *Hamm*, 275 F. Supp. 3d at 874. If conditional certification is granted, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Myers*, 201 F. Supp. 3d at 890 (quoting *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-cv-27, 2015 WL 6662919, at * 1 (S.D. Ohio Nov. 2, 2015)).

At the second stage of the certification process, a defendant may file a motion to decertify the class. During the second stage, the court makes a final determination on whether opt-in class members are similarly situated based upon a thorough review of the record after discovery is completed. *See Houston*, 2015 WL 8527339, at * 1; *Schwab v. Bernard*, No. 5:11CV1216, 2012 WL 1067074, at *2 (N.D. Ohio Mar. 28, 2012). This final certification decision is normally based on a variety of factors, including "factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien*, 575 F.3d at 584 (citations omitted).

### b. Conditional Certification

For the following reasons, the Court finds that Plaintiffs have satisfied the modest factual showing necessary to demonstrate that they are similarly situated to other JRE manufacturing employees at JRE's J.R. Wheel and J.R. Engineering facilities.

Plaintiffs have identified a common theory of JRE's alleged statutory violations. *See O'Brien*, 575 F.3d at 585; *Marek,* 2017 WL 5891765, at *2. Plaintiff Roberts and Opt-In Plaintiffs Adkins and Pastorius all provided Declarations in which they state that they (1) were employed by JRE; (2) were only paid for work performed during their scheduled shift times; (3) were required to perform work before and after their scheduled shift times for which they were not paid, including changing into and out of personal protective equipment, getting tools and necessary equipment, walking to their assigned areas, and performing manufacturing work; and (4) were not compensated for all of the time they worked, including overtime hours, as a result of these policies and practices. (Doc. Nos. 12-2, 12-3.) In addition, Plaintiffs each aver that they observed that other manufacturing employees were subject to the same treatment as them. (*Id.*) These allegations are sufficient to meet Plaintiff's modest burden of showing that manufacturing employees at JRE's facilities share a common theory of alleged violations and are, thus, similarly situated.

JRE's arguments to the contrary do not warrant a different conclusion. First, JRE contends that Plaintiffs' Declarations provide no actual details beyond the verbatim allegations of the Complaint, such as exactly which pieces of personal protective equipment they were required to wear, what tools or equipment they needed to gather before their shift, or how long it took them to walk to their work stations. (Doc. No. 16 at 9-10.) As a result, JRE asserts that because Plaintiffs do not provide sufficient evidence of what they themselves did, the Court cannot infer that other employees engaged in similar work. (*Id.*)

However, courts have rejected similar arguments in other cases and granted conditional certification despite minimal evidence regarding the substance of the plaintiffs' work. For example, in *Hane v. On Time Securing, Inc.*, neither the complaint nor the opt-in plaintiffs' declarations

13

provided any detail regarding any of the plaintiffs' job duties. No. 5:16–cv–2002, 2017 WL 4169646, at *4 (N.D. Ohio Sept. 20, 2017). Nonetheless, the court granted the plaintiff's motion for conditional certification because the plaintiffs alleged that they were "hourly employees of defendants . . . who were not paid overtime for hours worked over forty in certain workweeks." *Id.* at *4-5. Similarly, in *Bauer*, the court held:

> Although plaintiff's allegations and declarations are quite bare-bones, especially regarding their job duties, they have done enough to meet the low threshold for showing that they are similarly situated to other inside sales representatives. Specifically, they each aver that they performed inside sales work, that they were not customarily away from Transtar's place of business, that they regularly worked over 40 hours per week, that they were paid a commission and/or salary wage, and that they were not paid overtime.

2016 WL 1408830, at *3. Likewise, despite the minimal factual detail or specificity in Plaintiffs' Declarations, Plaintiffs have sufficiently identified a common theory of JRE's alleged statutory violation: JRE's alleged failure to pay its manufacturing employees for performing work before and after their scheduled start and stop times, resulting in employees not being paid overtime compensation.

Next, JRE argues that certification should be precluded because Plaintiffs' "allegations do not even provide this Court with enough evidence to determine that an FLSA violation occurred as they provide no basis to conclude that such alleged work took more than a 'de minimis' amount of time." (Doc. No. 16 at 9.) JRE additionally points to Roberts's Declaration—which states that if he arrived less than ten minutes before his scheduled shift, he would clock in prior to beginning work—as evidence that any alleged pre-shift work necessarily took less than ten minutes to complete. (*Id.* at 10-11.) At this stage in the proceedings, however, "[i]t is well settled that no merits-based inquiry is appropriate." *Murton*, 2008 WL 5725631, at *5. This includes inquiry into the *de minimis* nature of

14

any alleged violations. *Bolden v. Wayne Farms, LLC*, Nos. 5:06-CV-2096-IPJ, 5:07-CV-639-IPJ, 2007 U.S. Dist. LEXIS 103968, at *78 n.3 (N.D. Ala. July 3, 2007) ("Additionally, Defendant alleges that the amount of time spent donning and doffing gear is *de minimis* . . . . However, these arguments go to the merits of Plaintiffs' claims and are not relevant to the issue of whether other similarly situated individuals are subject to the same 'unified policy, plan or scheme of discrimination.'") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)). Moreover, even JRE's own records show that Roberts's and Adkins's punched-in and punched-out time exceeded the hours on their handwritten timesheets by more than ten minutes at least occasionally. (Doc. No. 16-38 at ¶¶ 6-7.) Accordingly, the Court will not deny conditional certification on this basis.

Similarly, JRE's reliance on the evidence it submitted in connection with its opposition brief must be rejected because it also goes to the merits of Plaintiff's claims. (Doc. No. 16 at 11-12.) JRE's evidence relates directly to whether it requires its employees to perform work before or after their scheduled shifts and how long any such work would take. (*Id.*) Even though Plaintiffs' Declarations are less specific, JRE's evidence clearly contradicts Plaintiffs' assertions that they—and others they observed—were in fact required to perform pre-shift and post-shift work for which they were not paid. As noted above, at the conditional certification stage, a court "does not generally consider the merits of claims, resolve factual disputes, or evaluate credibility." *Waggoner*, 110 F. Supp. 3d at 765. Thus, the Court will not do so here.

Moreover, the single case cited by JRE regarding this issue is distinguishable. In *Gaffers v. Sitel Worldwide Corp.*, the court considered evidence of the defendants' policies in finding that the plaintiff had failed to show that he was similarly situated to other home-based customer care agents ("HBCCAs") when the plaintiff failed to show he had "personal knowledge of the other HBCCAs,

15

how they record their time, why, whether, or in what manner they were required to work off-the-clock, or what specific policies or practices required other HBCCAs to not be paid for all work time." No. 3-16-0128, 2016 WL 3137726, at *3 (M.D. Tenn. June 6, 2016). In contrast, in this case, Plaintiffs have each alleged that they personally observed other manufacturing employees at JRE's facilities being required to perform unpaid work in the same manner as them.

JRE also contends that Plaintiff cannot show a factual nexus between what JRE has labeled his "off-the-clock" theory of liability and a class of similarly situated aggrieved workers. (Doc. No. 16 at 1-2, 12-14.) JRE points out that Roberts is the only declarant to aver that if he arrived more than ten minutes early, he proceeded to work off-the-clock and then returned to punch in once his shift started, and that he was told that his timecard should state his scheduled start time, not the time that he actually started performing work. (*Id.* at 12.) Moreover, Roberts did not clearly allege that he observed other employees engaging in this behavior or being similarly instructed. (*Id.* at 12-13.) However, these allegations are not necessary to establish that conditional certification is appropriate. Plaintiffs' common theory of liability is that JRE failed to pay its manufacturing employees for performing work before and after their scheduled start and stop times, regardless of whether this work was off the clock or not. The fact that Roberts included additional details in his Declaration that were not included in the Opt-In Plaintiffs' Declarations does not affect whether or not Plaintiffs have shown that they are similarly situated to other manufacturing employees at this stage.

Finally, JRE asserts that conditional certification should be denied because Plaintiffs were not employees of JRE, Plaintiff has not joined the staffing agencies that employed Plaintiffs, and it is not an efficient use of judicial resources to initiate the conditional certification process without the involvement of their employers. (Doc. No. 16 at 14.) JRE cites no authority for its position. Nor

16

has JRE moved to dismiss this action based on Plaintiff's failure to join a party under Fed. R. Civ. P. 19. As such, the Court finds JRE has not presented a sufficient reason to deny conditional certification in this regard.

### c. Notice and Opt-In Discovery

In Plaintiff's Motion for Conditional Certification, Plaintiff also seeks an order authorizing notice to potential class members and requiring JRE to provide certain information regarding potential class members. (Doc. No. 12 at 15; Doc Nos. 12-1, 12-4, 12-5.) JRE has objected to several aspects of Plaintiff's proposed notice and discovery request. (Doc. No. 16 at 14-15.) The Court addresses these issues below.

First, JRE proposes that the Court modify the class definition to include the theories of liability upon which Plaintiffs base their claims. (Doc. No. 16 at 14.) Specifically, depending on the theories that the Court finds proper, JRE asserts the class should be limited to employees that "'arrived more than ten minutes before their scheduled start time and performed manufacturing work' and/or 'performed unpaid pre-shift and post-shift work.'" (*Id.*) Plaintiff mainly objects to the inclusion of the phrase "more than ten minutes" as unnecessarily restrictive. (Doc. No. 20 at 9-10.) Because Plaintiff's theory of liability focuses on the fact that manufacturing employees performed unpaid work before and after their scheduled shifts, the Court finds the first part of JRE's proposed modification unnecessary. Thus, the Court will modify the proposed class definition by limiting it to employees who "performed unpaid pre-shift and/or post-shift work."

Next, JRE objects to sending the notice to workers within the last three years at J.R. Wheel and J.R. Engineering because Plaintiffs have not adequately alleged that JRE's violations were knowing and willful. (Doc. No. 16 at 14-15.) FLSA claims for unpaid compensation must be filed

17

within two years after the cause of action accrues, unless there was a willful violation of the statute, in which case the statute of limitations is extended to three years. *See* 29 U.S.C. § 255(a); *Hamm*, 275 F. Supp. 3d at 878. "To establish willfulness, a plaintiff is required to show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Hamm*, 275 F. Supp. 3d at 878 (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966-67 (6th Cir. 1991)). Determination of whether an employer's violation was willful, however, is generally considered at the second stage of the certification process. *See Kinder v. MAC Mfg. Inc.*, 318 F. Supp. 3d 1041, 1048 (N.D. Ohio 2018) (rejecting defendants' argument that plaintiff's "mere allegation that MAC acted 'willfully,' with no factual basis, is insufficient to warrant application of the three-year statute of limitations" at the conditional certification stage). Plaintiff has alleged that JRE "knowingly and willfully" violated the FLSA through its actions with regard to its manufacturing employees. (Doc. No. 1 at ¶ 39.) As such, at this early stage, the Court will permit a three-year period for the purpose of notice to potential class members.

Further, JRE asserts that, for statute of limitations purposes, certification should be based on the date of approval of the notice, not the filing of the lawsuit. (Doc. No. 16 at 15.) Plaintiff does not dispute this, and the Court agrees with JRE. *Crescenzo*, 2016 WL 3277226, at \*5 ("Courts in the Sixth Circuit have found that class certification is appropriately limited to three years prior to the date of approval of the notice, and not the filing of the lawsuit."). Accordingly, the Court finds that conditional certification should count back from the date of this Order, not the filing of Plaintiff's suit.

JRE also objects to the provision of email addresses and telephone numbers for potential class members. (Doc. No. 16 at 15.) Plaintiff responds by asserting that such discovery requests are

commonly approved. (Doc. No. 20 at 12-14.) At this time, the Court will direct that notice be sent to potential opt-ins via ordinary mail and email. Therefore, the Court will deny Plaintiff's request that JRE also produce the last known telephone numbers of potential class members. *See Ouellette v. Ameridial, Inc.*, No. 5:16-cv-2144, 2017 WL 2972636, at *6 (N.D. Ohio July 12, 2017).

Finally, JRE requests (1) that the notice inform potential class members that they may be liable for JRE's attorneys' fees should JRE prevail in this lawsuit, (2) that JRE be provided thirty days—instead of the fourteen days proposed by Plaintiff—to produce the information requested, and (3) that potential class members be required to return consent forms within forty-five days. (Doc. No. 16 at 15.) Plaintiff does not object to any of these requests, and the Court finds them reasonable. *See Oullette*, 2017 WL 2972636, at *6; *Melton v. Lawrence*, No. 1:18-cv-167-SKL, 2018 WL 5723942, at *10 (E.D. Tenn. Oct. 31, 2018) ("[I]n light of no objection from Plaintiff, the Court finds Defendants' proposal for including language about a potential award of Defendants' attorney fees and costs well-taken."). Therefore, the Court approves each of these requests.

## V. Conclusion

For the reasons set forth above, JRE's Motion to Strike (Doc. No. 14) is GRANTED IN PART and DENIED IN PART, as follows. JRE's Motion to Strike is GRANTED with respect to the statements in Paragraphs 11 and 14 of Roberts's Declaration (Doc. No. 12-2) and Paragraph 7 of Pastorius's and Adkins's Declarations (Doc. No. 12-3) that aver Plaintiffs are similarly situated to other JRE manufacturing employees, but is DENIED in all other respects.

Plaintiff's Motion for Conditional Certification (Doc. No. 12) is also GRANTED IN PART and DENIED IN PART, as follows. The Court hereby conditionally certifies the following collective action class:

19

>All former and current non-exempt manufacturing employees of J.R. Engineering, Inc. in Barberton, Ohio and Norton, Ohio between October 31, 2016 and the present who performed unpaid pre-shift and/or post-shift work.

With the benefit of the Court's rulings herein, the parties are hereby ordered to meet and confer, through counsel, regarding the content and form of notice to be given to the potential opt-ins and to submit, within thirty (30) days of the date of this Order, a joint proposed judicial notice.  In addition, JRE shall, within thirty (30) days of the date of this Order, provide Plaintiff with a list of the full name, last known home address (including zip code), last known email address, and employment dates of all former and current non-exempt manufacturing employees of JRE in Barberton, Ohio and Norton, Ohio between October 31, 2016 and the present.  Once approved, the Notice shall be sent to the potential opt-ins within thirty (30) days using the home and email addresses provided by JRE.  Duplicate copies of the Notice may be sent in the event new, updated, or corrected addresses are found for one or more potential opt-ins.

**IT IS SO ORDERED.**

Date:  October 31, 2019

 *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE